IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY RICHARD MILLER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-262-GPM |
| | ) |
| SALVADOR A. GODINEZ, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 100), which recommends that the motion for summary judgment for failure to exhaust administrative remedies filed by Defendant Chad Beltz ("Beltz") (Doc. 80) be granted in part and denied in part. The Report and Recommendation was entered on June 3, 2013. Plaintiff, Jerry Miller ("Miller"), filed an objection to the Report and Recommendation (Doc. 105), to which Beltz replied (Doc. 109).

## Background

In this 42 U.S.C. § 1983 case, Miller asserts a claim for deliberate indifference to a serious medical need against Beltz, Defendant Angel Rector, and Unknown Party # 1. In short, Miller claims Rector changed the dosage of one of his medications, which subsequently resulted in physical problems; Beltz and the Unknown Defendant both refused Miller's requests for medical care.

Beltz filed a motion for summary judgment claiming that Miller failed to exhaust his administrative remedies as to Beltz, pursuant to 42 U.S.C. § 1997e(a) (Doc. 80). Miller filed a response to Beltz's motion for summary judgment (Doc. 89). Rector did not file a dispositive motion on the issue of exhaustion. On April 25, 2013, United States Magistrate Judge Donald Wilkerson conducted an evidentiary hearing on the issue of exhaustion pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (Doc. 95). Upon review of the papers, the docket, and the Magistrate Judge's Report and Recommendation, the Court concludes the Report and Recommendation accurately states the nature of the evidence presented by both sides, including the testimony heard during the *Pavey* hearing, as well as the applicable law and the requirements of the administrative process.

## Evidence

There are three grievances that pertain to the instant motion for summary judgment and subsequent *Pavey* hearing. The first grievance is dated November 28, 2011 (Doc. 91, p. 55-56); the second grievance is dated December 13, 2011 (Doc. 91, p.57-58); and the third grievance is dated March 22, 2012 (Doc. 81-1, p. 1-4).

First, Beltz contends that Miller did not properly exhaust the March 22, 2012 grievance because he filed the instant lawsuit on March 26, 2012 before receiving a final determination from the Administrative Review Board. As for the November 28, 2011 grievance, Beltz contends this grievance was filed past the 60 day timeframe allowed pursuant to Departmental Rule 504 (Doc. 81; 97 p. 5). The December 13, 2011 grievance, according to Beltz, lacks the sufficient detail to identify Beltz or place him on notice of a claim (Doc. 81; 97 p. 5).

At the *Pavey* hearing, Miller noted that although the March 26, 2012 mentions events in November 2011, it does not pertain to this lawsuit (*See* Doc. 97, p. 5-6). However, Miller identified the November 28, 2011 grievance at the *Pavey* hearing as one of the grievances that is the subject of this lawsuit (Doc. 97, p. 7). A review of this November 28, 2011 grievance (Doc. 91, p. 55-56) reveals Miller identified Beltz and alleged facts that implicate the present lawsuit – deliberate indifference to medical need. The grievance is labeled as an emergency (Doc. 91, p. 55). The counselor received this grievance on December 5, 2011, but did not respond until February 3, 2012 (Doc. 91, p. 55). When the counselor did respond, he found Miller's grievance unsubstantiated (Doc. 91, p. 55).

The Defense noted that the proper procedure for an emergency grievance is to submit the grievance to the Chief Administrative Officer ("CAO") at the prison rather than the counselor (Doc. 97, p. 14). The next step after the CAO is to submit the grievance to the grievance officer (Doc. 97, p. 14).

The final issue addressed at the *Pavey* hearing was the December 13, 2011 grievance. Miller identified this grievance as an additional one that implicates this lawsuit (Doc. 97, p. 19). Magistrate Judge Wilkerson pressed Miller to explain how the December 13, 2011 grievance identified or referenced Beltz. The following exchange ensued:

  COURT:  Okay. Well, here, what I'm looking for - - I don't see anything in this grievance that complains about CO Beltz.

  MILLER:  Your Honor, on the seventh line down from the grievance summary it states 11/16, incident on 11/16 and 11/30.

  COURT:  Yeah, but you say with CO's personally but you didn't name Beltz, so how would they know that this grievance is about Beltz?

  MILLER:  This is all that - - we're not required - - we have to give the best description.

   COURT:  Stop, stop, stop, stop. Listen to me. I know the law, okay? I understand you don't have to name him, but you have to describe him with sufficient particularity that they have to put the institution on notice as to who you're grieving about. And there's nothing in here that describes any - - in my opinion, nothing in here that describes Beltz or puts the institution on notice that you're talking about Beltz. That's what I'm saying. What is - - and if I'm wrong, point me to it. What's in here to let the institution know that this grievance is about Beltz? You understand what I'm saying?

   MILLER:  Yes, I understand what you're saying, Your Honor.

(Doc. 97, p. 21-22). A review of the December 13, 2011 grievance reveals that the grievance is devoid of any reference to Beltz.

## Conclusions of the Report and Recommendation

The Report and Recommendation focuses on the November and December grievances. Judge Wilkerson's conclusion with respect to the December 13, 2011 grievance follows the exchange outlined *supra*. The Report and Recommendation finds that Miller's December grievance fails to provide sufficient information to place the institution on notice of a grievance against Beltz. Accordingly, Judge Wilkerson concludes that Miller failed to exhaust his administrative remedies with respect to the December 13, 2011 grievance.

With respect to the November 28, 2011 grievance, Judge Wilkerson acknowledged that Miller did not *properly* exhaust his administrative remedies for this emergency grievance. The grievance *could* have been timely and properly submitted, however, if the counselor had not waited nearly two months, according to the Magistrate Judge.

## Miller's Objections to the Report and Recommendation

Just like at the *Pavey* hearing, Miller's objection to the Report and Recommendation acknowledges that his December 13, 2011 grievance does *not* identify Beltz (Doc. 105, p. 5). Miller argues, however, that his reference to incidents on November 16, 2011 and November 30,

2011 should be sufficient to identify Beltz (Doc. 105, p. 5).

## Discussion

In this case, where timely objections have been filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)B), (C), FED. R. CIV. P.72(b); SDIL-LR 73(1)(b); *Harper v. City of Chicago Heights* 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court "may accept, reject, or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all the evidence contained in the record and "give 'fresh consideration to those issues to which *specific* objections have been made.'" *Id.*, *quoting* 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8 at p.55 (1st ed. 1973) (1992 Pocket Part) (emphasis added). However, where neither timely nor specific objections to the Report and Recommendation are made, pursuant to 28 U.S.C. § 636(b), the Court need not conduct a *de novo* review of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

### *The Requirements of Exhaustion*

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies prior to bringing suit under § 1983. 42 U.S.C. § 1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

As an inmate confined with the Illinois Department of Corrections, Miller was required to follow the regulations contained in the Illinois Administrative Code to properly exhaust his claims. Under the procedures set forth in the Illinois Administrative Code, an inmate must generally submit their grievances through a sequential process which begins with an attempt by the inmate to resolve the issue informally through a prison counselor. ILL. ADMIN. CODE tit. 20 § 504.810(a). If the complaint remains unresolved, the inmate must submit a written grievance to the grievance officer at the facility who submits a recommendation to the CAO at the facility—typically the warden. ILL. ADMIN. CODE tit. 20, §§ 504.810, 504.830.

An inmate may also request that the grievance be handled as an emergency, and submit the grievance directly to the CAO to be reviewed on an expedited basis. ILL. ADMIN. CODE tit. 20, § 504.840. When an emergency grievance is filed, the CAO must expedite the processing of the grievance and follow up with the inmate to inform the inmate what action if any has been or will be taken. *Id*.

### *The December 13, 2011 Grievance*

First, Miller's December 13, 2011 – it is clear to the Court that this grievance does not identify Beltz (by name or description) even though Miller clearly knew Beltz by name. Miller's knowledge of Beltz is indicated by his previous grievance where he specifically named Beltz.

A grievance "shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE tit. 20 § 504.810(b). The Court is also mindful that "[g]rievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010).

In this case, Miller clearly knew Beltz because he had filed a grievance against him in the past and specifically identified Beltz by name (*See* Doc. 91, p. 55). In reading Miller's previous grievance, it is evident he had face to face interaction with Beltz and therefore would also have the ability to provide descriptive information about Beltz. But the December 13, 2011 grievance neither identifies Beltz nor provides any descriptive information about him. In fact, Miller wants the Court to infer from his passing reference to an incident on November 16, 2011, that the December grievance pertains to Beltz. This passing reference, however, is not enough given that Miller knew Beltz by name and description.

Miller even acknowledges that he did not name Beltz in his December 13, 201 grievance (Doc. 105, p. 5). Since it is undisputed that Miller did not name or describe Beltz, even though all he had to do was either (and in fact had the ability to do either one), he failed to comply with § 504.810(b) of the Illinois Administrative Code. Mr. Miller has therefore failed to comply with a governing administrative rule and has therefore failed to exhaust his administrative remedies on this grievance with respect to Beltz.[1]

### *The November 28, 2011 Grievance*

Next, the Court must turn to Miller's November 28, 2011 grievance. As previously noted, an emergency grievance must be submitted *directly* to the CAO and reviewed on an expedited basis. ILL. ADMIN. CODE tit. 20, § 504.840. The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Chandler*, 438 F.3d at 809. An administrative remedy, however, may

---

[1] The Magistrate Judge, in his Report and Recommendation, found that Miller's grievance was insufficient to put the institute on notice as to who is being grieved. The Court agrees with the conclusion of the Report and Recommendation, but limits its rationale to that articulated *supra* – Miller did not describe or identify Beltz and had done so in previous grievances. The Court declines to adopt the rationale that Miller's grievance must put the institution on notice as to who is being grieved.

be deemed exhausted when prison officials fail to respond to inmate grievances, which thus renders the remedy unavailable. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

In this case, Miller failed to follow the proper procedure for filing an administrative grievance. Rather than submitting the grievance directly to the CAO, Miller's grievance went to the grievance counselor. However, there was confusion at the *Pavey* hearing *how or why* this happened – and this confusion remains. Miller claims he designated the grievance as an emergency and placed it in the grievance box, but that grievance must have been intercepted (Doc. 97, p. 15). Defense counsel did not anticipate this issue coming up at the *Pavey* hearing and therefore was unable substantiate Mr. Miller's claim or explain this confusion.

Nevertheless, the grievance counselor did ultimately respond to Miller's grievance – albeit after nearly two months (Doc. 91, p. 55). The grievance counselor's response indicated that he was unable to substantiate Miller's claim (Doc. 91, p. 55). Although this is not an insignificant delay, there is no indication Miller ever followed up on this grievance or filed a second grievance because of the delay, which distinguishes this case from *Chandler*. *See Chandler*, 438 F.3d at 807 ("After Dole received decisions from the ARB on his other two appeals, he wrote to the ARB to inquire about the status of his third grievance, the one at issue in this case. He was told that the ARB had no record of the grievance.").

It is also important to note that once Miller received his response from the grievance counselor (and saw that it went to the grievance counselor instead of the CAO) he did not subsequently try and submit his emergency grievance to the CAO. Had Miller attempted to submit this grievance to the CAO and it subsequently been denied as untimely, then Miller would be able to avail himself of the Court's holding in *Lewis*. *See Winder v. Sheahan*, 52 Fed. Appx.

833, 834 (7th Cir. 2002) ("But in *Lewis*, the prisoner's complaint was dismissed because his administrative grievance appeal was, in fact, denied as untimely as a result of delays caused by the prison.").

In *Smith v. Davis*, the Court of Appeals noted that once the prison has failed to respond to an inmate's grievance within the established time frame, this allows the inmate to move to the next stage of the grievance process. *Smith v. Davis*, 218 Fed. Appx. 505, 507 (7th Cir. 2007). Here, Miller never attempted to move to the next step of his emergency grievance process during the time period that he did not receive a response. And again, once he did receive a response from the grievance counselor, he never attempted to submit his emergency grievance to the proper first step – the CAO.

Although confusion remains why Miller's emergency grievance went to the grievance counselor rather than the CAO, the grievance counselor did ultimately respond and find the grievance unsubstantiated. From here, a multitude of avenues existed for Miller, none of which he pursued. Accordingly, the Court declines to adopt the Report and Recommendation on this front. The Court finds that Miller failed to exhaust his administrative remedies for his November 28, 2011 grievance.

## Conclusion

The Court **ADOPTS** the Report and Recommendation as to the December 13, 2011 grievance and **DECLINES** to adopt the Report and Recommendation as to the November 28, 2011 grievance. Plaintiff, Jerry Miller, did not exhaust his administrative remedies prior to filing suit for both the December 13, 2011 and November 28, 2011 grievance.

Defendant Beltz's motion for summary judgment (Doc. 80) is **GRANTED**. All claims against Beltz that arise from these two grievances are **DISMISSED** *without* prejudice.  *See Phillips v. Walker,* 443 Fed.Appx. 213, 215 (7th Cir. 2011) ("Dismissals for failure to exhaust under § 1997e(a) are without prejudice…while many of these same defendants might have valid defenses about nonexhaustion or the statute of limitations if [plaintiff] brings a new suit, those are questions to be resolved in the new litigation.")

**IT IS SO ORDERED.**

**DATED**:   September 12, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge