IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY RICHARD MILLER, JR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-CV-262-NJR-DGW |
| | ) |
| ANGEL RECTOR and | ) |
| UNKNOWN PARTY 1, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

On March 26, 2012, Plaintiff Jerry Richard Miller Jr., an inmate currently housed at Dixon Psychiatric Center, filed this lawsuit pursuant to 42 U.S.C. § 1983. Through two Orders of the Court (Docs. 34 and 120), Plaintiff's claims were limited to a single claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Angel Rector and Unknown Party 1. Plaintiff's claim concerns the medical care he received during his incarceration at the Pinckneyville Correctional Center from August 2011 to May 2012. Specifically, Plaintiff alleges Defendant Rector changed the dosage of a medication and failed to repair or replace a damaged CPAP machine.

Now pending before the Court is the Motion for Summary Judgment filed by Defendant Rector (Doc. 148). Plaintiff filed a response to the Motion (Doc. 153), and Defendant Rector filed a reply (Doc. 154). The Court has carefully considered the briefs

and all of the evidence submitted by the parties and, for the reasons set forth below, grants Defendant Rector's Motion.

## FACTUAL BACKGROUND

The following facts are undisputed. On August 31, 2011, Plaintiff was transferred to the Pinckneyville Correctional Center ("Pinckneyville") (*See* Doc. 19, pp. 7-8). Defendant Angel Rector was employed at Pinckneyville as a nurse practitioner during the relevant time period (Doc. 149-1). Prior to his transfer to Pinckneyville, Plaintiff was prescribed 30 mg of Imdur,[1] a medication used to prevent angina attacks[2] (Doc. 149-2). Upon his transfer, on August 31, 2011, Plaintiff's "Offender Health Status Transfer Summary," (hereinafter "transfer summary"), which was filled out by his prior institution, indicated that he was prescribed 80 mg of Imdur (Doc. 149-4, pp. 18-19). That information was recorded by a nurse (not Defendant Rector) and subsequently noted in Plaintiff's "Offender Outpatient Progress Notes" (Docs. 149-1, 149-2). The medical records reveal, however, that he was prescribed 30 mg of Imdur from September 1, 2011, through November 28, 2011 (Docs. 149-1, 149-1). The medical records further reveal that Plaintiff's doctor, Dr. Vipin Shah, noted a prescription of 30 mg of Imdur from September 1, 2011, to December 1, 2011 (Docs. 149-2, 153-1).

Defendant Rector, who renewed and re-prescribed Plaintiff's Imdur prescription,

---

[1] The medical records refer to Isosorbide, which both parties agree is the generic form of Imdur.

[2] Angina is described as "[a] severe, often constricting pain or sensation of pressure" usually located in the chest and caused by coronary disease. STEDMAN'S MEDICAL DICTIONARY 85 (28th ed. 2006).

dispensed 80 mg of Imdur to Plaintiff throughout his stay at Pinckneyville (Docs. 149-2, 149-4). Defendant Rector relied on Plaintiff's transfer summary in dispensing and re-prescribing Plaintiff's medication and did not refer or consult Plaintiff's actual/original prescriptions (as filled out by his doctor) (Doc. 149-4, pp. 37-38). Plaintiff's Imdur prescription, at 80 mg, was continued from November 18, 2011, until May 25, 2012, when Plaintiff was transferred to the Dixon Correctional Center (Docs. 149-2, 149-4). As of September 25, 2014, Plaintiff was prescribed 120 mg of Imdur (Doc. 149-3).

On February 8, 2012, Plaintiff was examined by Defendant Rector (Doc. 149-1). He complained of a headache, was prescribed Tylenol, and referred to the doctor (Doc. 149-2).[3] On March 13, 2012, Plaintiff, who was brought in for chest pains, stated that he was being overdosed on his medication and that he had a headache for the last six months (Doc. 149-2, p. 15). He similarly complained of over-dosing on March 14, 2012 (Doc. 149-2, p. 17). At his deposition, taken on September 24, 2014, Plaintiff testified that the increase in his Imdur dosage caused Hyperammonemia (high ammonia levels) and psychosis (Doc. 149-3, pp. 96-97, Doc. 149-7). It is undisputed, however, that the increased dosage of Imdur does not cause these conditions (Docs. 149-1, 149-6).[4]

---

[3] While not mentioned by either party, Plaintiff also complained that his "head is killing me" on November 30, 2011, and he was prescribed Tylenol (Doc. 149-2, p. 6). He felt "much better" by December 1, 2011 (Doc. 149-2, p. 9).

[4] Negative side-effects of this medication include: "Headache, dizziness, dry mouth, asthenia, cardiac failure, abdominal pain, earache, arrhythmia, hyperuricemia, arthralgia, purpura, anxiety, hypochromic anemia, atrophic vaginitis, bacterial

Plaintiff also testified that he suffered from months of headaches, numbness, unsteady walking, increase in angina symptoms, and loss of consciousness (Doc. 149-5). Plaintiff does not cite to any point in the medical record that would reflect a majority of these conditions, and there is no indication in the record that these conditions were caused by an overdose of Imdur.

Plaintiff offers no argument or evidence as to his claim that Defendant failed to provide appropriate care as to his CPAP machine. The evidence reveals that Plaintiff's machine was confiscated upon his transfer to Pinckneyville by persons other than Defendant Rector (Doc. 19, p. 8). Defendant issued a permit for the machine on September 8, 2011, and it was returned to Plaintiff on September 25, 2012 (Docs. 149-1, 149-2). The CPAP machine was evaluated, and replacement parts were ordered by Defendant and given to Plaintiff (*Id.*). But Plaintiff returned the new parts to Defendant (*Id.*). Plaintiff was in possession and was able to regularly use his machine from September 25, 2011, until at least April 11, 2012 (*Id.*). There is no evidence that Plaintiff suffered any adverse health effects related to the use (or lack of use) of his CPAP machine.

## DISCUSSION

A.  **Legal Standard for Summary Judgment**

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

---

infection." PDR.NET, http://www.pdr.net (search "PDR Search" for "Imdur") (last visited July 20, 2015).

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial . . . . A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### B. Deliberate Indifference

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, a prisoner must show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly

affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). There is no dispute that Plaintiff suffered from serious medical conditions.

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of

a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

     Plaintiff argues that Defendant Rector's increase of his Imdur medication from 30 mg, as prescribed by his doctor, to 80 mg, demonstrates deliberate indifference to his serious medical need and that it caused him various ill effects. The record reveals that Defendant Rector followed the prescription's notations and dosages contained in Plaintiff's transfer summary when he was transferred to Pinckneyville. Plaintiff has presented no case authority to suggest that a medical provider cannot rely on the records maintained by other medical providers. *See Duckworth*, 532 F.3d 679 (holding that a medical profession can be held liable if his decision "is such a substantial departure from accepted professional judgment, practice, or standards . . .").

     The record further reveals that the supposed negative side-effects of an increased dosage of Imdur are not those associated with the medication (i.e. increase in ammonia concentrations and psychosis). Plaintiff has presented no evidence that the increase in Plaintiff's Imdur medication caused these adverse effects. Moreover, the other

side-effects that Plaintiff indicates he suffered, headaches, etc., are *de minimis*--there is no showing that these side effects were significant and that Defendant Rector knew that they were significant. When Plaintiff complained about such symptoms to Defendant Rector, she prescribed Tylenol and referred him to a physician, actions that do not establish deliberate indifference.

While Plaintiff may have established that that Defendant Rector failed to actually refer back to his original prescription, such an error, if any, is merely negligence and does not show deliberate indifference. Put another way, Plaintiff fails to establish that Defendant Rector knew of and disregarded the risk of 80 mg of Imdur on Plaintiff's health; Plaintiff has not shown that Defendant Rector was aware of any facts from which an inference could be drawn that his medication created a serious risk of harm. *See Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th Cir. 2000). Indeed, Plaintiff has failed to show that he suffered *any* harm as a result of the increase in his Imdur prescription. His conjecture that he suffered various ill effects is just speculation that this medication created additional medical issues.

Additionally, any such claim related to his CPAP machine must fail as a matter of law. Plaintiff has not presented evidence or argument related to his CPAP machine. The evidence reveals that Defendant Rector checked Plaintiff's machine, that it was working properly, and that Plaintiff in fact used his machine with no negative consequences.

## C. Unknown Party 1

The only remaining Defendant in this suit is an Unknown Party 1. Plaintiff's deliberate indifference claim against the Unknown Party 1 is unrelated to his claim

against Defendant Rector. Specifically, Plaintiff alleges that Defendant Unknown Party 1 refused his request for medical treatment on a day he was having symptoms (*See* Doc. 34). On July 1, 2015, Plaintiff sought leave to amend his complaint to name the Unknown Party 1 (Doc. 162). On July 23, 2015, Magistrate Judge Donald G. Wilkerson denied Plaintiff's Motion as untimely and prejudicial (*See* Doc. 165). In light of that ruling, the Court finds that the interests of justice require dismissal of Defendant Unknown Party 1 without prejudice.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Angel Rector (Doc. 148) is **GRANTED**. Further, Defendant Unknown Party 1 is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case on the Court's docket.

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues petitioner plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

Plaintiff is further advised that a motion filed pursuant to Federal Rule of Civil

Procedure 59(e) must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion *may* toll the 30-day appeal deadline, but a motion for relief from a final judgment, order, or proceeding does not toll the deadline for an appeal.

**IT IS SO ORDERED.**

DATED: **July 31, 2015**

                                                **s/ Nancy J. Rosenstengel**
                                                **NANCY J. ROSENSTENGEL**
                                                **United States District Judge**